**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

TOMIKA HUGHEY                     )
                                 )
        Plaintiff,               )
                                 )
        v.                       )
                                 )
                                 )        No. 07-cv-01513 (RJL)
WASHINGTON METROPOLITAN          )
AREA TRANSIT AUTHORITY           )
                                 )
        Defendant                )
_____ )

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby moves for summary judgment on plaintiff's complaint on the grounds that she has failed to exhaust administrative remedies by failing to file a Charge with the Equal Employment Opportunity Commission (EEOC") with 180 days of the alleged discriminatory nonselections at issue in this case.

Two jobs are at issue in this case. The first was for a Strategic Advocacy Specialist position. Plaintiff never filed an EEOC Charge for her nonselection for this position. The second was for two openings for a Strategic Policy and Communications Specialist position. Plaintiff filed a Charge for this position over 180 days (a) after she was told she was not being interviewed for the position and (b) after the announcement that two white individuals were selected for the openings.

1

This Motion is based on the accompanying Memorandum of Points and

Authorities, the Statement of Material Facts Not in Dispute and the Exhibits thereto.

Respectfully submitted,


Carol B. O'Keeffe #445277
General Counsel

Mark F. Sullivan #430876
Deputy General Counsel

_____/s/_____
David J. Shaffer #413484
Assistant General counsel
WMATA
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Dshaffer@wmata.com
Attorneys for Defendant WMATA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOMIKA HUGHEY | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | )    No. 07-cv-01513 (RJL) |
| WASHINGTON METROPOLITAN | ) |
| AREA TRANSIT AUTHORITY | ) |
| | ) |
|     Defendant | ) |
| | ) |

## DEFENDANT'S  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Washington Metropolitan Area Transit Authority ("WMATA") submits

the following Memorandum of Points and Authorities in Support of its Motion for

Summary Judgment on the grounds that plaintiff's claims under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000e *et seq*  ("Title VII") are barred by her failure to file

a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") within 180 days of the alleged discriminatory events.

### I.      FACTUAL BACKGROUND

In September, 2005 plaintiff Tomika Hughey, a black female, applied for two

positions in WMATA's Department of Policy and Government Affairs: (1) Strategic

Policy Advocacy Specialist and (2) Strategic Policy and Communications Specialist.

The second position had two vacancies.  Statement of Material Facts Not in Dispute

("SMF") at 1.   These positions were advertised as open until filled.  SMF 3.   Plaintiff

1

was interviewed by a panel for these positions and recommended for a second interview for the Strategic Advocacy Specialist Position.  SMF 2 and 5; Exhibit 2, Declaration of Deborah S. Lipman at 4 & 7.

During the second round of interviews the first two candidates to be interviewed were immediately selected for the Strategic Policy and Communications Specialist positions SMF 5.  Ms. Hughey was thereafter interviewed for the Strategic Advocacy position.  SMF 6.  She was so informed at the beginning of the interview.  SMF 6. Plaintiff was not selected for the Strategic Advocacy position, and was so informed by December 8, 2005 at the latest.  SMF 7 and Complaint ¶ 9.

On October 5, 2006, plaintiff filed a Charge with the EEOC alleging that she was discriminated against on account of her race for the Strategic Policy and Communications Positions.  SMF. 9.  Plaintiff never filed a Charge of Discrimination on the Strategic Advocacy Specialist position.  SMF 10.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate whenever the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  In ruling upon a

2

Summary Judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for Summary Judgment by responding with some factual showing to create a genuine issue of material fact.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).  Mere conclusory allegations are insufficient to raise a genuine issue of material fact and defeat entry of Summary Judgment.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

The court may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive."   Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  The D.C. Circuit cautions that federal anti-discrimination laws do not authorize courts to become "a super-personnel department that reexamines an entity's business decisions." Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (citing and quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied 479 U.S. 1066 (1987))

　　　　　**III.**　**ARGUMENT**

　　A.　Plaintiff's Failure to File an EEOC Charge for the Strategic Advocacy Position Is Fatal to Her Claim

A plaintiff has 180 days from an alleged discriminatory practice to file with the EEOC.  42 U.S.C. § 2000e-5(e)(1).  A party seeking relief under Title VII must file timely charges of employment discrimination with the EEOC before seeking judicial relief.  McDonnell Douglas  Corp. v. Green, 411 U.S. 792, 798 (1973); Washington v. WMATA, 160 F.3d 750, 752 (D.C. Cir. 1998), cert. denied, 527 U.S. 1038

3

(1999).  In <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002), the Court reaffirmed that the time limits of Title VII must be strictly adhered to, noting that the text of Title VII "makes the act of filing a charge within the specified time period mandatory."

In the case at hand, the <u>only</u> Charge that was filed with the EEOC was for the Strategic Policy and Communications Specialist position.  <u>See</u> Exhibit 5.  Moreover, this Charge was filed on October 5, 2006, well over 180 days after the alleged discriminatory event and more than 180 days after it was announced on December 8, 2005 that two other persons were selected for the positions.

Plaintiff is expected to argue that her Intake interview with the EEOC on July 10, 2006 satisfied the exhaustion requirement.  <u>See</u> Exhibit 7 hereto.  First, this was still over 180 days from when she admits in her Interrogatory Answers she had notice – December 8, 2005.  Exhibit 4.  She would have had to contact the EEOC by June 5, 2006 in order to make a timely Charge.  She did not contact the EEOC until July 10, 2006 to fill out an Intake Questionnaire and, as discussed below, the intake questionnaire did not specify the job for which she claims she was discriminatorily nonselected.  SMF 9.

    B.    <u>Plaintiff's Untimely Charge for Nonselection  to the Strategic Policy and Communications Specialist Position Is Fatal to That Claim as Well.</u>

Plaintiff is expected to argue that her intial intake questionnaire with the EEOC on July 10, 2006 suffices to meet the 180 day requirement of Title VII based on <u>Edelman v. Lynchburg College</u>, 535 U.S. 106 (2002) and <u>Carter v. WMATA</u>, 503 F.3d 143 (D.C. Cir. 2007).  Neither case will resurrect her untimely claim, for both are closely

4

limited to their facts.

In Edelman, the Court held that a verification of a timely filed Charge could relate back to the original filing of a letter, which contained all the elements of a Charge, to render it timely under the 180 day rule.  In Edelman, the employee had sent a EEOC a letter without oath or affirmation, alleging that he had been denied tenure on grounds of gender, national origin and religion, The EEOC sent the employee a "Charge of Discrimination" which the employee sent back, verified, after the 180 day filing period. The Court's holding is limited to the proposition that the EEOC's regulation allowing "relation back" of the verification was a reasonable exercise of its authority.

In Carter, the employee filed a charge of discrimination that mistakenly identified the date of the incident, but the employer, WMATA, allegedly had notice of the actual date of the event from the employee's internal charge and therefore was not prejudiced thereby.   Carter did not hold that an internal investigation by itself could satisfy the charge requirements of Title VII;  indeed it reaffirmed Ledbetter v. Goodyear Tire and Rubber Co., __ U.S. __, 127 S. Ct. 2162 (2007):

> As the Supreme Court recently emphasized in Ledbetter, Title VII's procedural framework – including the 180-day charging period – must be respected. [citation omitted]. Indeed, "strict adherence to the procedural requirement specified by the legislature is the best guarantee of evenhanded administration of the law." [citation omitted].  In this context, we note our decision does nothing to undermine Congress's careful calibration of title VII's procedure.  Carter's October 24, 2004 questionnaire – along with the undisputed fact that the alleged discrimination occurred on July 6, 2004 – fulfills the requirement of a filing within 180 days of the alleged discrimination.

Carter, 503 F.3d at 146.

This case is one step removed from <u>Carter</u>, for the questionnaire does not meet the standards of <u>Edelman</u>, because <u>Edelman</u> required that the letter to the EEOC otherwise fulfills  the requirements of a Charge and still be timely.  The questionnaire, exhibit 6, does not indicate the job that was at issue.

Nonetheless, under '<u>Edelman</u>, although the verification requirement related back, there was still a timely event to relate back to.  Here, plaintiff pleads in her Complaint that the selections for Strategic Policy and Communications Specialist positions, the only positions challenged in her Charge, were announced on December 7, 2005. Notwithstanding this admission, plaintiff states, contradictorily in her Complaint, that she was informed on February 21, 2006.  She cannot have it both ways.  Paragraph 9 of her Complaint constitutes a judicial admission that she was or should have been on notice that her 180-day period was running on December 7, 2005.  Her questionnaire was untimely.

Whereas in <u>Carter</u>, the Intake Questionnaire was filed with EEOC within 180 days of the operative event, in the instant case, nothing was filed within 180 days of the operative event.   Any other result here would completely eviscerate Title VII's 180-day statute of limitations whenever an employer voluntarily establishes an internal complaint procedure.  This would violate the mandate of <u>Ledbetter</u> and would be contrary to public policy by deterring employers from establishing internal complaint mechanisms. Indeed, so broadly construed, allowing plaintiff to extend <u>Carter</u> to this case would allow any complaint, formal or informal, whether filed with the EEOC or not,  to toll the statue of limitations under Title VII.

In <u>Washington v. WMATA</u>, 160 F.3d 750 (D.C. Cir. 1998), the D.C. Circuit

6

affirmed summary judgment for WMATA because of the plaintiff's failure to file a

charge of discrimination with the EEOC within 180 days, notwithstanding the fact

that the plaintiff had availed himself of WMATA's internal procedures for handling

such disputes, stating:

> Here, Washington has demonstrated no affirmative misconduct on the part of WMATA.  Nor has he shown that WMATA's decision letter disposing of his claim was misleading.  Indeed, because 180 days had already expired between Washington's demotion and the date the letter was issued, Washington could not have relied on the letter to his detriment. . . . "The Court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances," Smith-Haynie v. District of Columbia, 155 F.3d 575, 579-580 (D.C. Cir. 1998) (quotation omitted), and does "not extend to what is at best a garden variety claim of excusable neglect."  Irwin [v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990).]

Washington, 160 F.3d at 752.  Thus, Washington conclusively holds that invoking

oneself of WMATA's internal procedures does not toll the time to file with EEOC.

Carter in no way eviscerates the clear holding in Washington.

In the instant case, there are no "extraordinary" factors which would justify

equitable tolling. Plaintiff cannot demonstrate any misconduct on the part of WMATA.

WMATA submits that this Court must follow  Washington and limit Carter strictly  to its

facts.  In light of plaintiff's admissions in her Answers to Interrogatories and her

Complaint, even her questionnaire was untimely.  Washington is still good law and use

of WMATA's internal complaint procedures should not toll the time period for filing of

plaintiff's EEOC Charge.  This Court must strictly construe Title VII filing requirements

7

under the Supreme Court's mandate in <u>Ledbetter.</u>

**IV.    <u>CONCLUSION</u>**

For the reasons set forth above, WMATA's Motion for Summary Judgment should be granted.

Respectfully submitted,

Carol B. O'Keeffe #445277
General Counsel

Mark F. Sullivan #430876
Deputy General Counsel

_____/s/_____
David J. Shaffer #413484
Assistant General counsel
WMATA
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Dshaffer@wmata.com
Attorneys for Defendant WMATA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

TOMIKA HUGHEY                                      )
                                                   )
    Plaintiff,                            )
                                                   )
v.                                                 )
                                                   )   No. 07-cv-01513 (RJL)
                                                   )
WASHINGTON METROPOLITAN                            )
AREA TRANSIT AUTHORITY                             )
                                                   )
    Defendant                             )

---

### DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

    1.    Plaintiff Tomika Hughey applied for two positions with Defendant

Washington Metropolitan Area Transit Authority ("WMATA") in September, 2005: (1)

Strategic Policy Advocacy Specialit; and (2) Strategic Policy and Communications

Specialist, for which there were two vacancies.  Complaint, ¶7. Exhibit 1.

    2,    Plaintiff was interviewed by a panel for these positions and recommended

for a second interview for the Strategic Advocacy Specialist position..  Declaration of

Deborah Lipman at ¶¶ 4,5 & 6.  (Exhibit 2 hereto)l Complaint at ¶ 8.(plaintiff "was

advised that her skills best matched the Strategic Advocacy Position")

    3.    The positions were advertised as open until filled.  Declaration of Deborah

Lipman at ¶ 3.

    4.    A second hiring panel, comprised of Deborah Lipman (selecting official)

and Raymond Feldman, was convened to interview and select the individuals for the

1

positions.

5.      Upon interviewing Greg Potts and Jeanine Black, Ms. Lipman and Mr. Feldman made the decision to hire them for the two openings for Strategic Policy and Communications positions.  Declaration of Deborah Lipman at ¶ 6

6.      Ms. Lipman and Mr. Feldman continued down the interview list for the second position, that of Strategic Advocacy Specialist.  Ms. Hughey was only interviewed for the Strategic Advocacy Specialist position, and Ms. Lipman so informed her at the beginning of the interview.  Declaration of Deborah Lipman at ¶ 7;  Complaint ¶ 8 ("On November 8, 2005 Ms. Hughey was interviewed by a panel of three staff members consisting of an Indian male, a white male and a white female.  The parties advised Ms. Hughey that her skills best matched the Strategic Advocacy Specialist position and that she would be considered further for this position.")

7.      Sometime just after Thanksgiving, 2005, Ms. Lipman called Plaintiff to inform her that she was not being selected for the Strategic Advocacy position.  Lipman Declaration at ¶ 9.

8.      Plaintiff acknowledges that she was informed on December 8, 2005 that she was not selected for the Strategic Advocacy Specialist position.  Plaintiff's Answer to Interrogatory 6, attached as Exhibit 4 hereto.  On December 7, 2005, WMATA announced the hiring of two candidates for the Strategic Policy and Communications Specialist position.  Complaint ¶ 9.

9.      Plaintiff first filed a Charge of Discrimination with the EEOC on her nonselection to the two Strategic Policy and Communications positions on October 5, 2006.  Exhibit 5 hereto.  She first visited the EEOC on July 10, 2006.  Exhibit 6 hereto.

2

Her intake questionnaire on July 10, 2006 did not indicate the job for which she was claiming discrimination. Id.

10.    Plaintiff never filed a Charge of Discrimination with the EEOC on her nonselection to the Strategic Advocacy position.

Respectfully submitted,

Carol B. O'Keeffe #445277
General Counsel

Mark F. Sullivan #430876
Deputy General Counsel

_____/s/_____
David J. Shaffer #413484
Assistant General counsel
WMATA
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Dshaffer@wmata.com
Attorneys for Defendant WMATA

3

# EXHIBIT
# 1

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TOMIKA HUGHEY )
1122 Owen Place, N.E. )
Washington, D.C. 20002 )
)
    Plaintiff, )
) Case: 1:07-cv-01513
    v. ) Assigned To : Leon, Richard J.
) Assign. Date : 8/24/2007
WASHINGTON METROPOLITAN ) Description: EMPLOY DISCRIM.
AREA TRANSIT AUTHORITY )
600 Fifth Street, N.W. )
Washington, D.C. 20001 )
)
    Defendant. )

**JURY ACTION**

## COMPLAINT FOR DISCRIMINATION

COMES NOW Plaintiff Tomika Hughey, by and through undersigned counsel, and states as

follows:

1.    Plaintiff brings this action pursuant to Title VII for discrimination on the basis of race

in employment.

## JURISDICTION AND VENUE

2.    Jurisdiction of this court is founded pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1346

and 1446.

3.    Venue lies in this Court, pursuant to 28 U.S.C. §§ 1391 and 1402, as the employment

practices alleged to be unlawful were committed by defendant and its agents within the District of

Columbia.

## PARTIES

4.     Plaintiff, Tomika Hughey ("Hughey"), is an adult African-American female, a citizen of the United States and a bona fide resident of the District of Columbia.  At all times further relevant herein, Ms. Hughey was an employee of the Washington Metropolitan Area Transit Authority ("WMATA").

5.     WMATA is a duly-authorized and organized independent agency and instrumentality of the District of Columbia, State of Maryland, and Commonwealth of Virginia.  With its headquarters located in Washington, D.C, WMATA was created by the aforementioned states and the District of Columbia to plan, finance, construct and operate a comprehensive mass transit system for the Washington Metropolitan Area.  WMATA is subject to the prohibitions against discrimination pursuant to Title VII of the United States Code.

## FACTS COMMON TO EACH CAUSE OF ACTION

6.     Since November 3, 2003, Ms. Hughey had been employed with WMATA in Washington, D.C. as an Assistant Planning Project Manager.  Prior to arriving at WMATA, Ms. Hughey had received a Bachelor's degree in Finance from Howard University, a Master's of Science degree in Urban/Transportation Planning from Florida State University, and was pursuing a second Master's of Science degree in Historic Preservation from the George Washington University with an emphasis in the preservation of transportation systems and resources.  At WMATA, Ms. Hughey was assigned to work in the Office of Business Planning & Project Development.  Her duties in that office included, but were not limited to the following:  managing the community outreach and environmental processes for the Anacostia Corridor Demonstration Project and the multi-million dollar District of Columbia-funded District of Columbia Transit Alternatives Analysis (DCAA) a

2

000097

study of recommended, long-range, high-capacity, multi-modal transit for the District of Columbia; acting as a liaison and representative for WMATA on all District of Columbia economic development, planning and transportation projects to ensure consistency with Metrorail and Metrobus service; attending District-wide community meetings and Advisory Neighborhood Commission meetings; analysis of future land development trends in the District of Columbia and their impact on existing and future Metrorail and Metrobus service; and staffing the Metropolitan Washington Council of Governments (MWCOG) and the Washington Metropolitan Area Planning Organization (MPO) to ensure WMATA's engagement with the regional jurisdictions.

7.    In September 2005, Ms. Hughey applied for a promotion to fill a vacancy for Strategic Advocacy Specialist and two vacancies for Strategic Policy and Communications Specialist in WMATA's Office of Intergovernmental Relations. The minimum qualifications for each position were a Master's Degree in planning and eight years of experience in public administration and government relations. The Strategic Advocacy Specialist involved "developing and recommending strategic positions for the authority and communicating those on behalf of the Authority; communicating/business/stakeholder outreach and coalition building; directing and performing research and analysis to support the Authority's communications both internally and externally; assist in the developing of policy." The Strategic Policy and Communications Specialist position involved "analyzing, developing and recommending policy and strategic positions for the Authority and communicating those on behalf of the Authority; research and analysis to support the Authority's communications both internal and externally." Ms. Hughey not only possessed the minimum qualifications for each of these positions, but had extensive experience in urban planning with a specific expertise in building neighborhood planning capacity and public involvement and

3

000090

participation in urban transportation and economic development projects in small (up to 250,000 population) and large (over 500,000+ population) urban areas. Her experience included engaging communities in Los Angeles, California for the proposed extension of the Red Line Metrorail for the Los Angeles County Metropolitan Transit Authority (LACMTA) and aided underserved Los Angeles communities in identifying methods to enhance their access to transit and transit information; conducting community outreach to support long range planning efforts of Tallahassee-Leon County, Florida; the analysis of the capital and operating budgets of Federally-funded transit properties in the United States as a former Transit Analyst for over 80 public transit agencies in support of the Federal Transit Administration's (FTA) National Transit Database (NTD); directing all activities (outreach strategy, campaign events, primary and general election staffing) as the Ward 6 Coordinator for the Re-Election Campaign of Mayor Anthony Williams; and managing the volunteer-led and publicly funded revitalization efforts of the H Street, NE commercial corridor as the first Executive Director of the H Street Main Street Program.

8. On November 1, 2005, Ms. Hughey was interviewed by a panel of three staff members consisting of an Indian male, a white male and a white female. The panel advised Ms. Hughey that her skills best matched the Strategic Advocacy Specialist position and that she would be considered further for this position. During a second interview on November 5, 2005, with the Director of the Office of Governmental Affairs, a white female, and the Assistant General Manager for Communications, a white male, the white female asked Ms. Hughey, "Help me understand how I would send you to Virginia where 'good old boys are.' How would you represent the Authority"?

9. On December 7, 2005, WMATA announced the hiring of two candidates for the Strategic Policy and Communications positions. Both successful candidates were white with fewer

4

qualifications than Ms. Hughey and were hired from outside WMATA. On February 21, 2006, Ms. Hughey learned that she was not selected for the above positions or the position of Strategic Advocacy Specialist. For that position, a white male with fewer qualifications than Ms. Hughey was hired from outside WMATA.

10.    On February 22, 2006, Ms. Hughey filed a complaint for race discrimination with WMATA's Office of Civil Rights ("CIVR"). Following an internal investigation, the CIVR found "sufficient evidence to support a probable cause finding of discrimination." The CIVR also found that statements made by the white female panelist during Ms. Hughey's second interview "appeared to have racial overtones."

11.    On or about June 10, 2006, Ms. Hughey filed a complaint with the Equal Employment Opportunity Commission charging WMATA with unlawful discrimination based upon race. On or about May 28, 2007, a Right to Sue letter was mailed to Ms. Hughey by the United States Department of Justice.

### FIRST CAUSE OF ACTION
**Violation of Title VII – Race Discrimination**

12.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "11" as if originally plead herein.

13.    Defendant, through its agents or supervisors, unlawfully discriminated and denied equal employment opportunities for promotion and other terms and conditions of employment against Ms. Hughey in her employment because of her race, when it failed to promote or hire her, though she was qualified and less qualified white persons were promoted or hired in her stead, without cause of justification, in violation of Title VII of the Civil Rights Act of 1964, as amended.

000100

14.    As a direct and proximate result of the illegal employment discrimination by defendant, Ms. Hughey has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Hughey has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

15.    Defendant has followed a policy and practice of discrimination in employment against Ms. Hughey based upon her race.

16.    Ms. Hughey asserts that the outrageous conduct of defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)    Award her, under Title VII of the Civil Rights Act, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b)    Award her, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

(c)    Award her reasonable attorney's fees and costs of this action; and

(d)    Award her such other and further relief as this Court deems just and proper.

### SECOND CAUSE OF ACTION
### Violation of Title VII– Disparate Treatment

17.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "16" as if originally plead herein.

18.    Defendant, through its agents or supervisors, unlawfully discriminated and been denied equal employment opportunities for promotion and other terms and conditions of employment

6

000102

against Ms. Hughey in her employment because of her race, when it failed to promote or hire her, though she was qualified, and less qualified white candidates were promoted or hired in her stead, without cause or justification, in violation of Title VII of the Civil Rights Act of 1964, as amended.

19.    Ms. Hughey was qualified for the positions she held and sought promotions for, and performed her duties at the highest level. Ms. Hughey was nonetheless unlawfully singled out for adverse treatment in her terms of employment because of her race.

20.    As a direct and proximate result of the illegal employment discrimination by defendant, Ms. Hughey has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Hughey has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

21.    Defendant has followed a policy and practice of discrimination in employment against Ms. Hughey based upon her race.

22.    Ms. Hughey asserts that the outrageous conduct of defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)    Award her, under Title VII of the Civil Rights Act, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b)    Award her, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

(c)    Award her reasonable attorney's fees and costs of this action; and

7

0001 06

(d)   Award her such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Respectfully submitted,

 /s/ Lisa Alexis Jones
Lisa Alexis Jones, Esq.
Lisa Alexis Jones, PLLC
Unified Bar Number 421002
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-4507
(202) 434-8707 (Fax)
orbitcv@erols.com


 /s/ Cynthia Goode Works
Cynthia Goode Works, Esq.
The Law Office of Cynthia Goode Works, LLC
Unified Bar Number 439904
7500 Greenway Center Drive
Suite 330
Greenbelt, MD 20770
(301) 474-5562
(866) 474-8484 Fax
cynthia@goodeworkslaw.com

*Counsel for Plaintiff*

Dated: August 24, 2007

000108

# EXHIBIT

# 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOMIKA HUGHEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY )<br>)<br>Defendant ) | No. 07-cv-01513 (RJL) |

## <u>DECLARATION OF DEBORAH LIPMAN</u>

I, Deborah S. Lipman, hereby declare:

1.      I am the  Special Assistant to the Chief of Staff of the Washington

Metropolitan Area Transit Authority ("WMATA").  I have personal knowledge of the facts

set forth herein.

2.      During the period relating to this action, I was the Director of Policy and

Government Relations and the hiring manager for the positions of Strategic Advocacy

Specialist position and Strategic Policy and Communications Specialist positions, the

second of which had two vacancies.

3.      Both positions were advertised as open until filled.

4,      An interview panel chaired by Shiva Pant did the first screen and ranking

of candidates for the positions.  Ms. Hughey was recommended for further interview for

the Strategic Advocacy Specialist position.

5,      Mr. Pant prepared for me and Raymond Feldmen, my supervisor,  a list of

candidates, including plaintiff, who were to be given second interviews.

6.     After interviewing the first two candidates on the list, Greg Potts and Jeanine Black, Mr. Feldman and I decided to select them for the two vacancies for Strategic Policy and Communications Specialist positions.

7.     I informed plaintiff, Ms. Hughey, at the beginning of the interview that we were only interviewing her for the Strategic Advocacy position.

8.     We ultimately decided not to select Ms. Hughey for the position because we decided that another candidate had more applicable experience for the position.

9.     Sometime just after Thanksgiving, 2005, I called Ms. Hughey to inform here that she was not selected for the Strategic Advocacy position.

I declare that the foregoing is true and correct under penalty of perjury, this 25 day of June, 2008, in Washington, D.C.

_____/s/_____
Deborah S. Lipman

# EXHIBIT

# 3

**Candidate Interview Dates**
**by Debbie Lipman & Ray Feldmann**

October 11, 2005          Gregory Potts

October 21, 2005          Jeanine Black

October 21, 2005          Evelyn R. Frazier

October 26, 2005          Steve Strauss

November 4, 2005         Robert Puentes

November 4, 2005         Sara Wilson

November 7, 2005         Horace Jennings

November 9, 2005         Tomika Hughey

November 21, 2005        Craig Kwiecinski



DEPOSITION
EXHIBIT
Lipman #5
5-23-cv KH

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOMIKA HUGHEY | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-cv-01513 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

These objections are continuing in nature, and are hereby incorporated by reference in the specific responses set forth below. Without regard to objections made or not made in these general objections, or in the specific objections in individual interrogatories, plaintiff reserves the right to make any appropriate objections at any hearing or trial in this matter.

1.    Plaintiff objects to the instructions and definitions contained in defendant's Request for Interrogatories to the extent they exceed the permissible scope of discovery.

2.    Plaintiff objects to these Interrogatories to the extent that they seek irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

3.    Plaintiff objects to these Interrogatories to the extent that they are overly broad and unduly burdensome.

4.    Plaintiff objects to these Interrogatories to the extent that the information or documents sought are protected under the attorney-client privilege, the attorney work-product, or are subject to any other privilege. Plaintiff further objects to these Interrogatories to the extent that they seek legal conclusions or opinions.

marketing and promoting the H Street Corridor to developers, the DC Building Industry

Association, local and national retailers to support the H Street Strategic Development Plan and

encourage the revitalization of the H Street corridor in Northeast, Washington, DC. is a

testament to my knowledge of the political climate of the District which has 40 of WMATA's 86

stations in its jurisdictional boundaries.

INTERROGATORY NO. 6.    Please state when you learned that you were not selected
for the Strategic Advocacy Specialist position and how you learned of said fact, including the
time, place and manner of so learning.

RESPONSE:    On or around December 8, 2005, Ms. Lipman, the selecting official

phoned my office around 6:00 p.m. to advise that I had not been selected for the position.

INTERROGATORY NO. 7.    Please identify all jobs that you applied for, either within
WMATA or outside WMATA after November 1, 2005 through the present, including the results
of such efforts, e.g., were you offered the job, were you interviewed for the job, did you reject
any offers for such jobs or did you ultimately accept any such jobs.

RESPONSE:    Plaintiff hereby objects to the foregoing interrogatory request to

the extent that it is overly broad, unduly burdensome and not reasonably calculated to the

discovery of admissible evidence.  Without waiver of or prejudice to the foregoing objection,

plaintiff hereby states the following:

1. April 1, 2005 Applied; Business Analyst/3382; WMATA- Office of Business
Planning; Interviewed; Not selected; Wendy Jia selected and hired.

2. October 5, 2005 Applied; Transit Economist/ Analyst ; WMATA- Office of Business
Planning; Interviewed; Selected and promoted March 20, 2006 from $62,788 BO-12 to
$64,175 TA-22, for an increase of $1,387.00

3. November 28, 2005 Applied; Assistant Program Officer; Rural Local Initiatives
Support Corporation (LISC); Not interviewed; Not selected.

4. November 25, 2005 Applied; Urban Planner III; City of Alexandria; Not interviewed;
Not selected.

5. December 6, 2005 Applied; Community Relations Specialist, GS-301-13; Court
Services and Offender Supervision Agency for the District of Columbia (CSOSA); Did

7

# EXHIBIT 5

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 570-2006-01517 |

and EEOC

_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Tamika R. Hughey** | **(202) 289-8846** | **12-23-1971** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 1618** | **Washington, DC 20013** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **WMATA** | **500+** | **(202) 637-7000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **600 Fifth Street, N.W.** | **Washington, DC 20001** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-21-2006**   Latest **02-21-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. On 11/3/03, I commenced working for Respondent as an Assistant Planning Project Manager. In 9/05, I applied for a promotion to fill one of two vacancies for the position of Strategic Policy Analyst. My qualifications exceeded the minimal qualifications for this position. On 11/1/05, I was interviewed for this position by an interview panel. Thereafter, on approximately 2/21/06, I learned that I was denied selection to fill a vacancy for this position. By contrast, less qualified White applicants with less qualifying education and experience were selected to fill the two vacancies for this position. Presently, I am employed by Respondent as a Transit Economist Analyst.

II. I believe that I have been discriminated against based upon my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

2006 OCT -5 P 12: 13
1801 L ST. NW
WASHINGTON DC 20507
EEOC
WASHINGTON FIELD OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| October 5, 2006 | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
|---|---|---|
| Date | Charging Party Signature | |

000121

# EXHIBIT
# 6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C.  20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

# INTAKE QUESTIONNAIRE

(LOCAL USE FORM 283)
This form is covered by the Privacy Act of 1974.  See the Privacy Act
Statement on the last page of this document before completing this form.

| EEOC USE ONLY |
|---|
| INQUIRY #: |
| 570 2006-01577N |

**Please print your answers to the following questions.  When finished, sign and date on Page 5.**

First Name: _Tomika_      MI: _P_      Last Name: _Hughey_

Address: _P.O. Box 1618_      Apt. _____

City: _Washington_   State: _DC_   Zip Code: _20013-1618_  County: _____

Telephone #:  Home (_202_) _289-8846_      Cell   (_202_) _486-0346_

Work (_202_) _762-2429_

Email: _xcrophologa@yahoo.com_

Date of Birth: _12/23/1971_

RECEIVED
JULY
JUL 1 0 2006
By EEOC - WFO

Gender: [  ] Male      [ X ] Female

Race: [ X ] Black   [  ] White   [  ] Other Race _____

[  ] American Indian or Native American      [  ] Asian or Pacific Islander

National origin: [  ] Mexican      [  ] Hispanic      [  ] Arab, Middle Eastern

[  ] East Indian   [  ] Other _____

Provide the following information for a person we can contact if we are unable to reach you:

First Name: _____      MI: _____      Last Name: _____

Address: _____      Apt. _____

City: _____   State: _____   Zip Code: _____      County: _____

Telephone #:  Home      Cell

Work

000120

You believe you have been discriminated against because of:  *(Check all that apply)*

[X] Race          [ ] Color          [ ] Religion          [ ] National Origin

[ ] Age (40 or above)          [ ] Disability          [ ] Sex          [ ] Pregnancy

[X] Retaliation for   Charges in question

If you checked "retaliation," have you ever previously filed a charge with EEOC or another civil rights agency or complained to your employer about discrimination?

[ ] No [X] Yes –If yes, please explain:   Currently in current employer-based civil rights claim and am being subjected to undue and unjustified second round of interviews.

## COMPLAINT INFORMATION

For any block(s) that you checked above, describe the harm and how you feel you were discriminated against.  Include names and job titles of all those involved, and the dates you were harmed.

During an interview with Ms. Debbie Lipman, she asked me to "Help her [me] understand how I [she] would send me to represent the Authority in Virginia where there are "good ole" boys."

Her assumptions regarding my race made her make judgements about my abilities to perform the requirements of the position, notwithstanding my qualifications and experience.

Currently, the Civil Rights Office Director, Ms. Teresa Bailey is attempting to defer making a final recommendation on my case for fear of managements response.

What reason(s) did your employer give for the action(s) taken against you?  Or, what do you believe the employer will tell the EEOC?

Employer will advise EEOC that current complaint is being re-investigated to ensure accuracy of initial investigators investigation.

-3-

000128

*I declare under penalty of perjury that the information provided herein is true and correct to the best of my knowledge and understanding.*

X _____    X _____
           Signature                                     Date

Privacy Act Statement:
This form is covered by the Privacy Act of 1974, Public Law 93-579. Authority for requesting and uses of the personal date are given below.

    1. Form Number/Title/Date: Form 283, Intake Questionnaire, 10/94.
    2. Authority: U.S.C. 2000(e)(9), 29 U.S.C. 201, 29 U.S.C. 621
    3. Principal purposes: Provides information from the Charging Party relevant to filing a charge of discrimination.
    4. Routine uses: This questionnaire is used to make an official determination whether facts exist to prepare a charge of discrimination.
    5. Whether disclosure is mandatory or voluntary and effect on individual for not providing information: Voluntary. Failure to provide this information may affect whether the Commission processes your claim further.

Revised 6/06

000136

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

TOMIKA HUGHEY                              )
                                          )
    Plaintiff,                            )
                                          )
    v.                                    )
                                          )
                                          )          No. 07-cv-01513 (RJL)
WASHINGTON METROPOLITAN                    )
AREA TRANSIT AUTHORITY                     )
                                          )
    Defendant                             )
_____           )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court, having considered Defendant's Motion for Summary Judgment and good cause appearing, IT IS HEREBY ORDERED THAT the Motion is GRANTED and plaintiff's Complaint is DISMISSED WITH PREJUDICE.

_____
Richard J. Leon
United States District Judge