UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMIKA HUGHEY )<br>    )<br>   Plaintiff, )<br>    )<br>   v. )<br>    )<br>    ) No. 07-cv-01513 (RJL)<br>    )<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY )<br>    )<br>   Defendant )<br>    ) | |

### WMATA'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION

Plaintiff seeks to excuse her failure to file a timely charge of discrimination on grounds of equitable tolling. Her basic, and only, argument is that WMATA's internal Civil Rights investigation took too long, and that she relied upon that investigation to her detriment while allowing her statutory time frame under Title VII to pass. This Circuit's decision in Washington v. WMATA, 160 F.3d 750 (1998), decisively governs the analysis of her argument and requires that summary judgment be granted in favor of WMATA.

1,   Plaintiff Does Not Dispute That She Failed to Contact the EEOC Within 180 days of Being Informed That She Was not Selected for the Strategic Advocacy Specialist Position.

Plaintiff admits, in her Declaration (Exhibit E to Plaintiff's Opposition), that she was told on December 8, 2005 that she was not selected for the Strategic Advocacy

Position. Pl. Opp. at 2, ¶ 8 Ex .E at ¶ 9.[1]  She also admits in her Declaration that she first contacted the EEOC on July 10, 2006, more than 180 days later.

Plaintiff refuses to admit that she failed to file a charge with the EEOC with respect to the Strategic Advocacy position based upon the fact that she brought this claim to the EEOC's attention at the time she filed her Intake Questionnaire on July 10, 2006.  She does not proffer any explanation as to why her formal charge of discrimination filed on October 5, 2006 failed to contain any allegation concerning this nonselection, but referred only to her nonselection for the two Strategic Policy and Communications positions.  Instead, she relies on the recent Supreme Court decision in Federal Express v. Holowieski, 128 S. Ct. 1147 (2008),[2] for the proposition that the Intake Questionnaire may serve as a charge, and on Edeleman v. Lynchberg College, 535 U.S. 1066 (2002),[3] for the proposition that a verified Charge of discrimination may

---

[1] Plaintiff has a minor inconsistency on this point.  In her response to Defendant's Statement of Material Facts not in Dispute and in her Complaint, she says the date is December 8, whereas in her Declaration, Ex. E she says December 9.  This difference is not relevant to the Court's decision on this matter because she so far exceeded the 180 statute of limitations that even December 9 would render her claim untimely.

[2] The Court noted, however, that its decision was under the Age Discrimination in Employment Act (ADEA), whose charge filing requirements differed significantly from those under Title VII.  Holowieski , 128 S. Ct. at 1153 ("while there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination").   The Court need not resolve that issue here for the plaintiff has failed to demonstrate that the  essential elements of equitable tolling to necessitate such an inquiry.

[3] Edelman's holding, by itself,  does not, without Holowieski, save plaintiff's claim for the Strategic Advocacy position.  Edelman requires a charge to exist to relate back
(continued...)

relate back to a timely Intake Questionnaire. This argument still misses the mark, for it fails to explain why she did not go to the EEOC within 180 days of December 8, 2005. To excuse that failure she relies only upon the defense of equitable tolling.

2. Equitable Tolling Is Only "Sparingly" Granted When the Defendant Has Engaged in Affirmative Misconduct.

In Irwin v. Dept. of Veterans Affairs, 487 U.S. 89, 96 (1990), the Supreme Court set forth the standard governing equitable tolling under Title VII. It held that the doctrine should be granted only "sparingly," and "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." The plaintiff has the burden of proof of facts sufficient to demonstrate equitable tolling. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).

Plaintiff's argument is that WMATA's internal Civil Rights investigation took too long, partially because of the reassignment of the responsible investigator. She cannot argue, however, that it was biased, because it resulted in a finding of probable cause in her favor. Pl. Opp. at 12. If anything, the delay benefitted her. Absent affirmative misconduct on the part of WMATA that caused her to sit on her rights to go to the EEOC, however, she cannot rely upon the fact or length of this investigation to establish

---

[3](...continued)
to the initial Intake Questionnaire. Because the charge here alleged discrimination only with respect to the Strategic Policy and Communications positions, and not the Strategic Advocacy position, if the Court accepts plaintiff's argument for equitable tolling on the Strategic Advocacy position, further briefing will be required on the significant differences between the ADEA and Title VII in their charge filing requirements, as noted by the Supreme Court.

3

equitable tolling. The D.C. Circuit's decision in <u>Washington</u> conclusively so demonstrates in response to an identical argument:

> Here, Washington has demonstrated no affirmative misconduct on the part of WMATA. Nor has he shown that WMATA's decision letter disposing of his claim was misleading. Indeed, because <u>180 days had already expired between Washington's demotion and the date the letter was issued, Washington could not have relied on the letter to his detriment.</u> . . . "The Court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances," <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575, 579-580 (D.C. Cir. 1998) (quotation omitted), and does "not extend to what is at best a garden variety claim of excusable neglect." <u>Irwin [v. Department of Veteran Affairs</u>, 498 U.S. 89, 96 (1990).]

<u>Washington</u>, 160 F.3d at 752 (emphasis added). Accordingly, plaintiff's argument for equitable tolling for the Strategic Advocacy position must fail.

3.  <u>Plaintiff's Argument for Equitable Tolling for the Strategic Policy and Communications Position Must Fail as Well.</u>

Plaintiff argues that her time for contacting the EEOC with respect to the Strategic Policy and Communications Positions must run from when she inexplicably and fortuitously found out that someone else was selected on February 21, 2006, thereby making her July 10, 2006 initial contact with the EEOC timely. Plaintiff cannot meet her burden of proof of equitable tolling on this claim, either.

Plaintiff's case is one of disparate treatment arising out of an alleged discriminatory comment in her interview by the selecting official, Deborah Lipman, that "Help me to understand how I would send you to Virginia where the 'good old boys' are –

how would you represent the Authority.' Exhibit E to Pl. Opp. At ¶ 7. [4] Thus, plaintiff knew, on the date of her interview, November 1, 2005, of the alleged grounds for her complaint of discrimination. Plaintiff further admits that Ms. Lipman told her in the interview that she would be making a decision by the next Friday, Ex. E at ¶ 9, that she called Ms. Lipman on that Friday to inquire about her status, and that Ms. Lipman returned that call on December 8, 2005, informing her that she was not selected for the Strategic Policy Advocacy Position. Plaintiff does not explain why she did not inquire in that same conversation about the Strategic Policy and Communications position, but instead admits in her Declaration that, "I did not know of or inquire about the selection of Potts and Black for the two Strategic Policy & Communications position until my February 21, 2006 meeting with Mr. Feldman." Id. ¶ 29 (emphasis added). She further admits that WMATA announced the selection of the other two candidates for the Strategic Policy and Communications positions on December 7, 2006, the day before her conversation with Ms. Lipman. Complaint ¶ 9. Thus, the explanation for her lack of discussion of that matter during the December 8 conversation with Ms. Lipman is very clear – she already knew from the previous day's announcement. Nonetheless, the Court need not make that subjective factual inquiry on summary judgment, for the law requires a reasonably inquiry upon the plaintiff under an objective test. On these facts, plaintiff fails to meet this test.

---

[4] WMATA does not concede that this is a racial comment. Nonetheless, plaintiff alledgedly understood it as such at the time the statement was made by Ms. Lipman, and the statement formed the centerpiece of her internal, EEOC, and federal court complaints. The instant motion goes solely to timeliness, and not to the merits, which are strongly disputed.

4. <u>Plaintiff's Reliance Upon the Doctrine of Equitable Tolling Fails Because of Her Lack of Reasonable Diligence and is Not Objectively Reasonable.</u>

It is axiomatic that a plaintiff who seeks to resort to the equitable doctrine of equitable tolling in a Title VII case must come to the Court with clean hands. [See, e.g., <u>Neimida v. Shelly Eurocars, Inc.</u>, 182 F.3d 380, 384 (9th Cir. 1997). "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 151 (1984). Again, the facts in the case at hand point in the obvious direction: plaintiff admits that "Ms. Lipman told me that she thought my skills best fit the Strategic Advocacy position." Exhibit E ¶ 6. Based upon the objective facts as admitted by plaintiff, that she was told a decision would be made on her interview by the next Friday, that she called on that day and when that call was later returned, she either did not ask because she know or she behaved in an unreasonable manner in not asking about the Strategic Policy and Communications position.[5]

As the Sixth Circuit has recognized in the analogous situation of a plaintiff failing to file within 90 days of a Right to Sue letter;

> [A] Title VII plaintiff has a manifest common sense obligation
> to exercise ordinary diligence in prosecuting his or her claim,
> even in the absence of an explicit official directive, sister
> circuit have resolved that a Title VII plaintiff has constructive
> notices of his or her right to litigate on the day that the post
> office has delivered the [Right to Sue ] letter.

---

[5] The timing of Ms. Lipman's return call is also logical given plaintiff's allegations that the selection was announced on December 8. Ms. Lipman informed the person not selected the next day.

Graham-Humprhreys v. Membhips Brooks Museum of Art, Inc., , 209 F.3d 552, 557 (6th Cir. 2000).

In Acetro v. England, 328 F. Supp. 2d 1 (D.D.C. 2004), Judge Urbina of this Court granted summary judgment in favor of defendant when the plaintiff claimed he did not know of the 45-day statute of limitations for federal employees, and thus did not contact a counselor during that time period   The court held that:

> When determining whether the time period should be tolled, the test of whether an employee know of the time limits is not subjective. [citations omitted].  Instead, the proper test is whether information is available that is reasonably geared to inform the complainant of the relevant time limit. )Citations omitted).

Id. at 6.  The Court, following Washington, as well as  other D.C. Circuit cases, noted that "this Circuit has held that the court should equitably toll only in "extraordinary and carefully circumscribed" instances."  (citations omitted).  The Court then proceeded to engage in a detailed analysis of the facts to determine that "relevant information regarding the applicable time limits was available and was reasonably geared to inform a person of the time limits."  Id.  Thus, it is appropriate for the Court, on summary judgment to engage in a review of the facts to determine whether plaintiff has acted objectively reasonable.

With respect to the plaintiff's claim under the Rehabilitation Act, in Acetro, the Court also analyzed the plaintiff's professed lack of knowledge of discrimination from an objective standard.  Relying on the D.C. Circuit's decision in Stewart v. Ashcroft, 352 F.3d 533, 536 (D.C. Cir. 2003), the Court held that the time period to bring a claim ran from when the plaintiff "knew or reasonably should have known" that the discriminatory

matter occurred.  Id. at 7.   Here, it was the prohibition by defendant from using his personal handicapped parking card.  This act, according to the Court, should have put the plaintiff on notice of a discriminatory act.

The court articulated a "reasonable "suspicion" standard in determining the timeliness of a plaintiff's claim, following Judge Flannery's decision in Paredes v. Nagle 27 Fair Emp. Prac. Cas. (BNA) 1345, 1982 U.S. Dist. LEXIS 10956, *9 (D.C. C. Jan. 7, 1982):

> We do not think that complainants are entitled to waivers of the filing requirement merely because they are "not sure" that they have been discriminated against. This would give Title VII plaintiffs an advantage unknown in any other limitations area. While we do not decide precisely what standard is to be used, we think something like "reasonable suspicion" is appropriate.

Accord McCants v. Glickman, 180 F. Supp. 2d 35, 40 (D.D.C. 2001)(holding that D.C. Circuit follows "reasonable suspicion" standard).

Thus, in this Circuit, the plaintiff has a duty to act diligently and bring her claim to the EEOC within 180 days of when she knew or should have known or had reasonable suspicion that she was discriminated against.  This policy is consistent with the Supreme Court's mandate in the recent decision in Ledbetter v. Goodyear Tire and Rubber Co., __ U.S. __, 127 S. Ct. 2162 (2007), that Title VII's filing requirements must be strictly interpreted, recognizing that "Congress took a diametrically different approach, including in Title VII a provision allowing only a few months in most cases  to file a charge with the EEOC . . . experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." 127 S. Ct. at 2172.

8

5,   Conclusion

To survive summary judgment the nonmoving party must present more than "the mere existence of a 'scintilla of evidence' in support for its position." <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 353 (1986).  That is all that plaintiff has presented to establish her burden of proof of equitable tolling.

With respect to the Strategic Advocacy position, she admits that she did not contact the EEOC within 180 days of being informed of the decision.  WMATA's delay in completing its internal Civil Rights investigation cannot, as a matter of Circuit law, toll that time period under <u>Washington v. WMATA</u>.

With respect to the Strategic Policy and Communications positions, she admits that the alleged discriminatory comment was during her interview, that she was told a decision would be made next Friday, and that she called that Friday to inquire about the selection.  She admits that WMATA announced the selections on December 7, 2005, and that she received a telephone call from the selecting official on the next day, December 8, 2005.  Yet, she expects the court to believe that she was reasonably diligent by learning, or even inquiring, about her nonselection for over 3 months after she was told a decision was to me made.  Such a contention is neither plausible nor objectively reasonable.  Plaintiff failed to act with reasonable diligence and has not shown that WMATA misled or tricked her into waiting to initiating the administrative process with the EEOC.

Based on these facts, and this Circuit's decision in <u>Washington v. WMATA</u>, summary judgment should be granted in favor of WMATA.

Respectfully submitted,

Carol B. O'Keeffe #445277
General Counsel

Mark F. Sullivan #430876
Deputy General Counsel

_____/s/_____
David J. Shaffer #413484
Assistant General counsel
WMATA
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Dshaffer@wmata.com
**Attorneys for Defendant WMATA**